# EXHIBIT 2
# OPERATIVE PETITION OR COMPLAINT

Electronically Serv
Lynne Finley
District Clerk
Collin County, Texas
By Keri Crow Deputy
Envelope ID: 46492595

Cause No . 471-04739-2020

Pulaski, Jana                                                                                                    Petitioner

§   IN THE DISTRICT COURT
§
Vs.                                                         §   FOR THE STATE OF TEXAS
§
§   _____ JUDICIAL DISTRICT\
§
U.S. BANK TRUST NATIONAL                 §
ASSOCIATION, AS TRUSTEE OF               §
THE CABANA SERIES III TRUST              §
§
BSI Financial Services                            §
314 s. Franklin Street                             §
2nd Floor / P.O. Box 517                        §
Titusville, Pennsylvania 16354                §
§   IN THE COUNTY OF COLLIN

## COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES AND OTHER RELIEF

COMES NOW   Jana   Pulaski, , hereinafter "Plaintiff", respectfully filing this her COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES AND OTHER RELIEF against  U.S. BANK TRUST  NATIONAL ASSOCIATION,   AS TRUSTEE  OF THE  CABANA  SERIES  III TRUST and   BSI Financial Services as follows, to wit:

I.

NOTICE TO THE COURT: Use of all codes,  laws and/or rules of procedure cited herein that may not be  or represent  law duly passed by the legislature of  Texas, the state of the constitutional republic, United States of America; that government directly created through the sovereign electors on Texas ;  and/or that may not  be or represent  law enacted by  that legislature acting in its jurisdiction over  Texas , the state of the republic and in its jurisdiction over its state  citizens domiciled on the land thereon,  is only used here  to notice the Defendant(s) of that which is applicable to them and is not intended to be  construed by this Court as an act of the Plaintiff granting jurisdiction of such law over her, nor to be understood by the Court to mean that Plaintiff, the living soul, confers, submits to, or has knowingly and intentionally entered into any such other  jurisdiction alluded to thereby.

As grounds for relief requested, Plaintiffs would show unto the Court the following:

II.

## INTRODUCTION

Plaintiff is proceeding, sui juris in this case. Therefore, this Court must construe this claim liberally and hold it to a less stringent standard than the Court would apply to a pleading drafted by a lawyer. See, *Laber v. Harvey*, 438 F.3d 404, 413 n. 3 (4th Cir. 2006).

In *Picking*, the plaintiff's civil rights were 150 pages long and described by a Federal Judge as "inept." The Court held that where a plaintiff pleads pro-se in a suit for protection of civil rights, the court should endeavor to construe plaintiff's pleading without regard to technicalities. *Picking v. Pennsylvania Railway*, (151 F2d. 240) (N.J. is in 3r Cir.),

Third Circuit Court of Appeals. In *Walter Process Equipment v. Food Machinery*, 382 U.S. 172 (1965) it was held that in a "motion to dismiss, the material allegations of the complaint are taken as admitted."

From this vantage point, courts are reluctant to dismiss complaints unless it appears the plaintiff can prove no set of facts to support of his claim which would entitle him to relief. (See, *Conley vs. Gibson*, 335 U.S. 41 (1957).

Moreover, Plaintiff claims that statements of counsel in motion, briefs or in oral arguments are not facts before this Court. (See, *Trinsey v. Pagliaro*, 229 F. Supp. 647).


III.

## PARTIES AND VENUE

1.PLAINTIFF, Jana   Pulaski , is an adult Sovereign woman on Texas with her corrected status as a state national on texas, a state of the Constitutional republic, United States of America Domiciled on the land, on Texas, near  3013 Edwards Dr. Plano,  Texas,  state of the republic and in title to   property identified  as LOT 9 BLOCK T OF HIGHLANDS OF RUSSELL PARK, PHASE 3 AN ADDITION TO THE CITY OF PLANO, COLLIN COUNT , TEXAS, ACCORDING TO THE PLAT THERE OF RECORDED IN CABINET K PAGE 167, OF THE PLAT OF RECORDS COLLIN COUNTY , TEXAS.

2. The Defendant,  U.S. BANK TRUST  NATIONAL   ASSOCIATION,   AS TRUSTEE  OF THE CABANA  SERIES  III TRUST, upon best belief and knowledge is A REMIC Trust  to whom title to the trust deed has been assigned whose present address is 314 s. Franklin Street 2nd Floor / P.O. Box 517 Titusville, Pennsylvania 16354

3. Defendant BSI Financial Services is acting as servicer for the present alleged owner of the loan whose

address is 314 s. Franklin Street 2nd Floor / P.O. Box 517 Titusville, Pennsylvania 16354.

and is made a party to this dispute as they may claim a right to enforcement of the trust deed at issue.

The contract that is subject of this dispute was entered into between Plaintiff and the original lender for

whose actions Defendants are responsible to the Plaintiff regarding this contract within Collin County, Texas,

and which contract pertains to the refinancing of property located in Collin County, Texas .

Pursuant to these facts, upon best belief and knowledge of the Plaintiff venue is proper for the court

to hear this case.

IV.

STATEMENT OF FACTS

Plaintiff signed a Promissory Note in order to refinance the property located at, 3013 Edwards Dr. Plano,

Texas 75025, on or about March 20, 2003. (See exhibit PN, attached). After requesting documents to verify the

debt and Note Holder, the Defendants have refused to produce the Original Note or any other documentation.

Further, Defendants have not allowed Plaintiff's to review any documentation to confirm their authenticity.

Plaintiff allegedly signed a Deed of Trust on March 20, 2003, which was allegedly recorded in the office of the

County Clerk of the Deed of Trust Records of Collin County, Texas. (See exhibit DT attached.)

Although Plaintiff has requested documents to verify that all of the transfers and assignments of the Original

Deed of Trust were executed or recorded properly, the Defendants have not yet produced any such

documentation.

May 19, 2016, Countrywide Home Loans, Inc assigned and transferred to Ditech Financial LLC, its

successors and assigns, all its rights, title and interest in and to the Deed of Trust. The assignment was executed

by Edward Born as an Assistant V.P. of MERS as nominee for Countrywide Home Loans, Inc. (See exhibit

AS1, attached).

On September 7th, 2018 Assignment was made by: DITECH FINANCIAL, LLC BY MISSION GLOBAL,

LLC, ITS ATTORNEY-IN-FACT Assigning the trust deed to MTGLQ INVESTORS, LP.

(See exhibit AS2 attached.)

On January 3, 2019 MTGLQ INVESTORS, LP granted, assigned and transferred to U.S. BANK TRUST

NATIONAL ASSOCIATION, AS TRUSTEE OF THE CHALET SERIES III TRUST all beneficial

interest under this deed of trust, together with the certain notes described therein with all interest, all liens, and

any rights due or to become due thereon. The assignment was executed by **Biff Rogers** as a V.P. of MTGLQ

INVESTORS, LP. (See exhibit AS3 attached.)

On FEB 12, 2019 US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF CHALET SERIES III TRUST, granted, assigned and transferred to U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CABANA SERIES III TRUST, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.(See exhibit AS4, attached.)

Notice of Acceleration and Foreclosure was given May 8th ,2020.

V.

**FIRST CAUSE OF ACTION**

**THE CLAIM IS UNENFORCABLE**

**FOR LACK OF PROPER PARTY TO ITS ENFORCEMENT**

**Against All Defendants**

Defendants U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CABANA SERIES III TRUST's and their Servicer BSI Financial Services' claims in enforcement of contract against Plaintiff's property is an act by an IMPROPER **PARTY TO ITS ENFORCEMENT** in that the Defendants lacks the right to enforce the contract.

**a.**

As already noted, May 19, 2016, Countrywide Home Loans, Inc assigned and transferred to Ditech Financial LLC, its successors and assigns, all its rights, title and interest in and to the Deed of Trust. The assignment was executed by Edward Born as an Assistant V.P. of MERS as nominee for Countrywide Home Loans, Inc.(See exhibit AS1, attached). But Plaintiff finds no evidence that he was ever employed by Countrywide Home Loans having authority to execute such an assignment.

According to the MERS Certifying Handbook (Exhibit MH), which may be obtained through one of MERS' self-authenticating websites or from other authoritative sources, it specifically demonstrates in the Sample Corporate Resolution found therein, that a candidate, to be an assistant secretary or vice president of MERS and as such, authorized to make assignments in its behalf, **must be an officer of the company that is a member of MERS, whose employees are being certified in the MERS resolution to act for MERS in behalf of this company to:**

"(1) release the lien of any mortgage loan registered on the MERS System that is shown to be registered to the Member;

**(2) assign the lien of any mortgage loan naming MERS as the mortgagee when the Member is also the current promissory note-holder, or if the mortgage loan is registered on the MERS System, is shown to be registered to the Member;"** (emphasis added)

According to the MERS certifying Handbook, for **Edward Born** to make a valid legal assignment of this security deed to DITECH FINANCIAL, LLC , *or anyone else*, he must be an officer of COUNTRYWIDE HOME LOANS INC. for whom MERS was acting as nominee, <u>and</u> there must be a Corporate Resolution issued from COUNTRYWIDE HOME LOANS INC. *authorizing* Born to be made an Assistant Vice-President of MERS. On the basis of the facts herein cited, Plaintiffs allege that no such Corporate Resolution exists, and demand strict proof of any claim to the contrary.

Given these facts, until the actual employment relationship of **Edward Born** at the time of this assignment can be determined by the Court, it is impossible for the Court to know from the assignment in this case whether or not Born was actually empowered to act as an officer of COUNTRYWIDE HOME LOANS INC. On the absence of any evidence to the contrary known to the Plaintiff, Plaintiff here alleges **Edward Born** was *not* empowered to act as, an officer of COUNTRYWIDE HOME LOANS INC. at the time of this assignment, and as such was *NOT* authorized to make an assignment of this Security Deed for MERS who was acting "*solely as nominee for the Lender and Lender's successors and assigns", which was COUNTRYWIDE HOME LOANS INC. at that time*.

Consequently, this assignment to Ditech Financial LLC, its successors and assign, is invalid. Which, if proven, acts to invalidate succeeding assignments from DITECH FINANCIAL, LLC to MTGLQ INVESTORS, LP. and then from MTGLQ INVESTORS, LP to U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CHALET SERIES III TRUST and finally from U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CHALET SERIES III TRUST to U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CABANA SERIES III TRUST for the final assignee or their servicer to possess any rights to enforce this contract as the parties from whom they received those rights had received no such rights themselves and therefore could assign none to any other including the Defendants.

Case 21-40003   Doc 11-3   Filed 01/20/21   Entered 01/20/21 10:50:49   Desc Ex. 2
Complaint for Injunctive Relief Damages and Other Relief   Page 7 of 82

Electronically Serv
10/2/2020 5:10 F

Further, on the basis of these the facts, even if the assignment to DITECH FINANCIAL, LLC could in some way be considered valid, as noted above, on January 3, 2019 MTGLQ INVESTORS, LP granted, assigned and transferred to U.S. BANK TRUST NATIONAL ASSOCIATION,  AS TRUSTEE OF THE CHALET SERIES  III TRUST all beneficial interest under this deed of trust, together with the certain notes described therein with all interest, all liens, and any rights due or to become due thereon. The assignment was executed by **Biff Rogers** as a V.P. of MTGLQ INVESTORS, LP. (See exhibit AS3 attached.)

But Plaintiff finds no evidence that he was ever employed by MTGLQ INVESTORS, LP having authority to execute such an assignment. And does in fact find evidence that **Biff Rogers** at the official authoritative self-authenticating website   https://www.linkedin.com/in/biff-rogers-9ab3279  is identified as follows:

**Biff Rogers**

Vice President at Goldman Sachs

Dallas/Fort Worth Area414 connections

Join to Connect


Goldman Sachs


University of North Texas

Experience



-

2cfca9ac

**Vice President**

Goldman Sachs

Exigen Mortgage Asset Management

Sep 2010 – Present 9 years 11 months

**Asst. Vice President**

Exigen Mortgage Asset Management

May 2009 – Aug 2010 1 year 4 months

Again, as in the previous faulty assignment identified above, for **Biff Rogers** to make a valid legal assignment of this security deed to U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CHALET SERIES III TRUST its successors and assigns, *or anyone else*, he must be an officer of MTGLQ INVESTORS, LP., the supposed owner of the loan at that time, for whom he was acting. On the basis of the facts herein cited, Plaintiffs allege that he had no such relationship with MTGLQ INVESTORS, LP, and Plaintiff demand strict proof of any claim to the contrary.

Given these facts, until the actual employment relationship of **Biff Rogers** at the time of this assignment can be determined by the Court, it is impossible for the Court to know from the assignment in this case whether or not Rogers was actually empowered to act as an officer of MTGLQ INVESTORS, LP. On the basis of the evidence herein cited, Plaintiff here alleges **Biff Rogers** was *not* empowered to act as, an officer of MTGLQ INVESTORS, LP at the time of this assignment, and as such was *NOT* authorized to make an assignment of this Security Deed to U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CHALET SERIES III TRUST at that time.

Consequently, this assignment to U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CHALET SERIES III TRUST, its successors and assign, is invalid in its own right. Which, if proven, acts to doubly invalidate the succeeding assignment to U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CABANA SERIES III TRUST for this final assignee or their Servicer to possess any rights to enforce this contract as the party from whom they received those rights had received no such rights themselves and therefore could assign none to any other including the Defendants.

As a proximate result of these acts in the enforcement of the contract by IMPROPER **PARTIES TO THE CONTRACT'S ENFORCEMENT, THE CONTRACT is UNENFORCEABLE by Defendants U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CABANA SERIES III TRUST or their Servicer BSI Financial Services** and the Plaintiff will suffer irreparable damages, and be made to suffer loss thereby in at least the amount of the market value of the property at the time of such spurious sale. Defendant should be enjoined from this action and ordered to relinquish or abandon its claims and/or make full reconveyance of said property to Plaintiffs, or the Court should restore and quiet title to the security and benefit of the Plaintiffs, if it has been sold to a third party by the time these issues are adjudicated by the Court. Plaintiff prays the Court for this relief and that it be so ordered.

Plaintiff did not discover either the nature or the extent of these acts in the enforcement of a contract by IMPROPER **PARTIES TO THE CONTRACT'S ENFORCEMENT** as cited above perpetrated upon her by the Defendant until on or about July 2020.


**Plaintiff moves the court:**

For injunction against the sale of the property by Defendants until proper title to the loan can be established.

For damages as provided by statute;

For full restitution to Plaintiffs in the amount of the market value of the property at the time of such spurious sale.

For punitive damages to be determined by the court;

For such other and further relief as the court may deem just and proper.

**Plaintiff prays the Court for this relief and that it be so ordered.**

Plaintiff does not bring this cause of action for invalidation of this assignment as an interloping third party claiming any rights of interest in the contract between the assignee and assignor as abundant case law has ruled he does not have.

But a homeowner need not assert standing to challenge the validity of an assignment. The borrower is contractually obligated to the lender and/or their successors under the mortgage contract to defend generally the title to the Property against all claims and demands. This is seen in the borrower's Security Deed paragraph entitled "Borrower Covenants", page 3, to which the lender and its successors is also a party which states :
*"Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record."*

Regardless which of the two, assignee or assignor, is the perpetrator or the victim of a void or invalid assignment the borrower has obligated himself to defend whoever is determined to be the damaged party and more importantly the property itself ..... *against all claims and demands, subject to any encumbrances of record."* to prevent any invalid claim on rights to the property from being effected which is exactly what Plaintiff is doing in this cause of action and has an obligation and right to do as party to the Security Deed the rights to which is what is being transferred in this assignment.

There is an abundance of case law supporting this position among which are Saldivar (Texas Bankruptcy Court, Case No. 11-10689; Harrison v. Leach, KY 2010; Wells Fargo, N.A., as Trustee for ABFC 2006-OPTS3 Trust, ABFC Asset-Backed Certificates, Series 2006-OPTS3 v. Rotimi Erobobo et al, 2013 NY Slip Op 50675(Sup. Ct., Kings County 2013; CitiGroup Global Markets Realty Corp. v, Randolph Bowling, 25 Misc 3d 1244(A), 906 N.Y.S2d 778 (Sup. Ct., Kings County 2009); Wells Fargo Bank N.A. v. Marchione, 2009 NY Slip Op 7624 (2d Dept 2009)

**The facts surrounding these allegations not having been fully developed, Plaintiff here reserves the right to further plead facts and allegations in regard to this cause of action as may be found or learned during the course of additional investigation and discovery.**

**b.**

Plaintiff incorporates by reference all of the above allegations.

**For additional Good Cause Plaintiff would show there is further basis to show Defendants U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CABANA SERIES III TRUST or their Servicer BSI Financial Services are IMPROPER PARTIES TO THE CONTRACT'S ENFORCEMENT.**

**As noted above, After requesting documents to verify the debt and Note Holder, the Defendants have refused to produce the Original Note or any other documentation. Further, Defendants have not allowed Plaintiff's to review any documentation to confirm their authenticity.**

**And at no time in any legal proceeding or otherwise has Defendant or any claimant to being holder of the note demonstrated this.**

An examination of Exhibit PN shows a *copy* of the note, not the original note itself. An examination of the note copy shows it contains only one endorsement, that being a Blank endorsement by the original lender Countrywide and a copy of such a blank endorsed note cannot by definition be *self—authenticating as to their ownership of the actual debt instrument,*

Pursuant to Texas law § 3-205. **SPECIAL INDORSEMENT; BLANK INDORSEMENT; ANOMALOUS INDORSEMENT.**

 (b) If an <u>indorsement</u> is made by the holder of an <u>instrument</u> and it is not a special indorsement, it is a "**blank indorsement.**" **When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.**

In other words with evidence of nothing but a blank endorsement POSSESSION IS MANDATORY to prove rights to enforce it...Possession of the instrument itself ....*not a copy.*

And therefore, *the copy* of a blank endorsed note as in this case, under the law cited above, cannot by definition be *self—authenticating as to their ownership of the actual debt instrument.*


Based on present evidence as known to the court or to the Plaintiff, there is no way for the court or Plaintiff to know who actually has the original note OR what the legal endorsements to the note may actually be presently as to its present ownership.


Plaintiff further affirms she has at no time or in any capacity seen or examined any document purporting to be the said original note executed by Plaintiff that forms the basis for the loan in dispute in this case.

Before **Defendants U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CABANA SERIES III TRUST or their Servicer BSI Financial Services** can enforce the loan, they must be the legal owners of it as required by Texas Law.

Texas law §**3-201**
(a) "Negotiation" means **a transfer of possession**, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder.
(b) Except for negotiation by a remitter, if an instrument is payable to an identified person, **negotiation requires transfer of possession of the instrument and its indorsement by the holder. If an instrument is payable to bearer, it may be negotiated by transfer of possession alone.**


**3-205. Special indorsement; blank indorsement; anomalous indorsement** _
  (a) If an indorsement is made by the holder of an instrument, whether payable to an identified person or payable to bearer, and the indorsement identifies a person to whom it makes the instrument payable, it is a "**special indorsement.**" When specially indorsed, an instrument becomes payable to the identified person **and may be negotiated only by the indorsement of that person.** The principles stated in Code Section 11-3-110 apply to special indorsements.

(b) If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is **a "blank indorsement." When indorsed in blank, an instrument becomes payable to bearer and may be negotiated <u>by transfer of possession alone.</u>** until specially indorsed.

(c) The holder may convert a blank indorsement that consists only of a signature into a special indorsement by writing, above the signature of the endorser, words identifying the person to whom the instrument is made payable.

3-201. Moreover, the party **in possession of an indorsed in blank** note qualifies as a "holder" for purposes of the Texas statutes and, thus, **is the party entitled to enforce the instrument.** See **Section 3**-301 and **Section** 201(21)(a).

3-301 provides that the person entitled to enforce an instrument means (a) the holder of the instrument, (b) a note holder **in possession of the instrument** who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to **Section 3**-309 or **Section 3**-418. (emphasis added). **11-3**-201(21)(a) defines "Holder" as **the "person in possession of a negotiable instrument** that is payable either to bearer, or to an identified person that is the person in possession." (emphasis added). 201(5) defines "Bearer" as "**a person in control of a negotiable electronic document of title or a person in possession of a negotiable instrument,** negotiable tangible document of title or certificated security that is payable to bearer or indorsed in blank." (emphasis added).

IF the note is presently endorsed **'in blank'**, which is one of the possibilities, as a bearer instrument, the Note can be negotiated <u>through the transfer of possession alone.</u> See 201. POSSESSION OF A BLANK ENDORSED INSTRUMENT, if it is blank endorsed, IS MANDATORY TO ITS ENFORCEMENT.

**We point out to the court this note was executed and tendered to the original lender over 17 years ago. And there is no evidence that would prove anything as to any claimants claim to possession now. Such possession and ownership of this note HAS NOT BEEN ESTABLISHED.**

Under the Third Restatement of Property, **"[a] mortgage may be enforced only by, or in behalf of, a person who is entitled to enforce the obligation the mortgage secures."** Restatement (Third) of Property: Mortgages, § 5.4(c).

It is well established that the transfer of a note secured by a security trust carries with it the security, without any formal. Assignment or delivery, Carpenter vs. Longan, 83 US 271, 275 (1873).

The enforcement of a mortgage in foreclosure can be carried out **only by, or on behalf of a  person who is entitled to enforce the obligation that the mortgage secures," (the note),** and possession of the note remains a material question and relevant fact in dispute as to the rights of  the Defendant to make any claims to this loan contract.

Yet assuming *in arguendo* the note is endorsed **in blank** converting it to a bearer instrument, **which is one of the possibilities,** makes any copy of the note  wholly inadequate to establish who is or has right to be the bearer and standing to make this claim  in foreclosure now. **There is no evidence that  Defendant is the alleged bearer of the instrument and holder of the rights to contract in this disputed claim.**

In the day of computer technology and the sophisticated means by which a document can be put together to make the copies say whatever the maker wants to have them say with Plaintiff's  signature from the original attached  in fact is **no proof of anything** **without  competent fact witness they still hold the actual debt instrument to make claim.**

As already  shown statutes cited ***defines "Holder" as the "person in possession of a negotiable instrument…. And defines  "Bearer" as "a person in control of a negotiable electronic document of title or a person in possession of a negotiable instrument, negotiable tangible document of title or certificated security that is payable to bearer or indorsed in blank." (emphasis added).***

     **This is established as well under UCC 3-302, holder in due course. And   Texas Law  3-302.The only notice sufficient to inform all interested parties that a security interest in instruments has been perfected is actual possession by the secured party.**

Unequivocally the Court's rule is that in order to prove the "instrument", **possession is mandatory. AND NO POSSESION OF THE NOTE HAS BEEN DEMONSTRATED BY ITS PRODUCTION BEFORE ANY COURT.**

Defendants would ask this court  to JUST TAKE THE DEFENDANT'S WORD FOR IT that they have the note and can produce it **when this court full well knows if they <u>do have</u> the instrument then they <u>can</u> produce it in their possession. This court would be  rushing to judgment pre-judging the facts of the case to presume that Defendant  is the actual and current owner of it when there is no competent fact witness in evidence that establishes this.**

**Therefore these facts** act to challenge **Defendant's** claim to be the current alleged holder of rights to enforce this contract with the assignment of security deed none of which is ***supported by competent and reliable evidence*** in any exchange of correspondence or requests between Plaintiff and Defendant.

**Premises considered,** based on the facts of this case as presently know and the law here cited  Plaintiff here challenges and alleges that **Defendants U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CABANA SERIES III TRUST or their Servicer BSI Financial Services** are IMPROPER **PARTY TO THE CONTRACT'S ENFORCEMENT and THE CONTRACT IS UNENFORCABLE by them, being neither the lawful assignees of the security deed nor having established they are holder or owners of the note and loan on which it is based.**


As a proximate result of these acts of an IMPROPER **PARTY TO THE CONTRACT'S ENFORCEMENT, THE CONTRACT IS UNENFORCABLE** in foreclosure **by these Defendants** and the Plaintiff has been damaged causing her now to face imminent foreclosure from parties who do not hold the right to execute such action in their behalf or any other.

Plaintiff did not discover either the nature or the extent of these acts of an IMPROPER **PARTY TO THE CONTRACT'S ENFORCEMENT** as cited above perpetrated upon her by the Defendants until on or about July 2020.


Defendants' actions are act of an IMPROPER **PARTY TO THE CONTRACT'S ENFORCEMENT** as cited above perpetrated upon her with callous disregard for the rights of said Plaintiff and **THE CONTRACT IS UNENFORCABLE by these Defendants.**


**As a proximate result of Defendants' actions, Plaintiff will be made to suffer loss thereby in the amount of the market value of the property at the time of such spurious sale and Defendant should be enjoined from such sale and further ordered to make full reconveyance of said property to Plaintiff or the Court should restore and quiet title to the security and benefit of the Plaintiff if it has been sold to a third party by the time these issues are adjudicated by the Court.**

**Wherefore, Plaintiff moves the court for the following relief:**

**That Defendants U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CABANA SERIES III TRUST or their Servicer BSI Financial Services should be permanently enjoined from making claim or taking any such foreclosure actions against Plaintiff's property, U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CABANA SERIES III TRUST or their Servicer BSI Financial Services not being a competent party to enforcement of this contract and not being the holder or owner of the loan or the security deed or acting in behalf of a party who is, and Defendant should be ordered to release all claim on the property, subject of the alleged debt, identified at, 3013 Edwards Dr. Plano, Texas 75025;**

For monetary damages as provided by statute;

For punitive damages;

For such other and further relief as the court may deem just and proper.

**Plaintiff prays the Court for this relief and that it be so ordered.**

**VI.**

**SECOND CAUSE OF ACTION**

**WRONGFUL DISHONOR OF TENDER OF PAYMENT**

**Against Servicer BSI Financial Services**

Plaintiff will affirm in affidavit, that **May 30, 2020,** via Registered Mail, delivery confirmation # RE 369 783 314 US tender in discharge of this indebtedness was made in her behalf by William Palmer in full accord and satisfaction sent to the properly designated person, office, and place served as Satisfaction of Obligation to BSI Financial Services, 314 Franklin Street Second Floor Post Office Box517 Titusville, Pennsylvania 16354. Plaintiff has no knowledge under the law of anything other than that this debt is discharged. and that credit should have been given and adjustment of this account made by BSI Financial Services accordingly.

BSI has made no mention of the dispute that has been ongoing over the tender in discharge of this obligation since it was received by BSI in June 2020.

**Whether this debt had been lawfully discharged is clearly a material fact in dispute in this case.**
Following the tender of payment Plaintiff received a  letter June 15, 2020 from BSI Financial Services
noticing Plaintiff the instrument was being returned with the reason being  as stated in the letter, "*a certified
check or money order is required for the loan payment.*" (See exhibit BSL, attached.)
The Plaintiff will affirm it is her experience in paying this account over the years that she rarely if ever
submitted any *certified* check  and that NO payment of hers has ever been returned because it was not
*certified .*


Further, in making such a rejection of payment the Defendant is attempting to unilaterally renovate the
contract which has the Plaintiff, the maker of the contract,  clearly stating  on the fourth line of the note:
"*I will make all loan payments under this note in the form of cash, check, or money order.*" (See exhibit PN,
attached), which in fact was what *was* submitted in by Palmer in behalf of the Plaintiff.
Pursuant to **Texas Law** 3-603 TENDER OF PAYMENT (b)" If tender of payment of an obligation to pay an
instrument is made to a person entitled to enforce the instrument and the tender is refused, **there is
discharge, to the extent of the amount of the tender, of the obligation.**


Plaintiff will  affirm  as a self-evident historical fact,  tender was  **refused,** and pursuant to law here cited it
is her contention the obligation of this loan must be considered discharged as a matter of law.
**Further, there has been provided no evidence from the defendant showing the tender in discharge in
question, cannot be settled as instructed or that any attempt was made to present the tender in
discharge for settlement.**
**Defendant  produced  no records showing that in fact presentment was attempted by their banking
institution showing that the  tender in discharge tendered in settlement of this account has been
dishonored, returned, not accepted or not honored by the drawee when finally presented  for
verification and settlement as instructed.**
**Defendant, in return of the tender in discharge,  produced no documents defendant would be relying on
that support a contention that their bank was incapable of making presentment of the tender in
discharge in question for settlement.**
**Defendant can produce no correspondence of defendant with Plaintiff wherein defendant requested
further instruction or assistance of the Plaintiff in gaining settlement of  her tender in discharge at
issue.**

As noted above, following the tender of payment on or about June 15, 2020 Plaintiff received from BSI Financial Services the return of the instrument noticing Plaintiff it was being returned for the invalid reason cited.

BSI Financial Services sent out another statement alleging a debt and Plaintiff retuned that statement with refused for cause, on each page and sent it back to BSI. BSI proceeded to re-initiate the foreclosure procedure that was previously in place.

There was attached to the letter the original instrument tendered for Plaintiff to be able to see what markings of dishonor, as required by law for an instrument to be dishonored by William Palmer's bank, had actually been marked on the instrument by Bank of America to see if it had in fact been negotiated by the bank for settlement. **And there were none.**

Texas Law 3-503. NOTICE OF DISHONOR

(b) Notice of dishonor may be given by any person; may be given by any commercially reasonable means, including an oral, written, or electronic communication; and is sufficient if it reasonably identifies the instrument and indicates that the instrument has been dishonored or has not been paid or accepted.

c) Subject to Section 3-504(c), "with respect to an instrument taken for collection notice of dishonor must be given.... within 30 days following the day on which the person receives notice of dishonor. **With respect to any other instrument, notice of dishonor must be given within 30 days following the day on which dishonor occurs."**

**"The obligation of an indorser stated in Section 3-415(a) and the obligation of a drawer stated in Section 3-414(d) may not be enforced unless (i) the indorser or drawer is given notice of dishonor of the instrument complying with this section…"**

3-415. OBLIGATION OF INDORSER

(c) If notice of dishonor of an instrument is required by Section 3-503 and notice of dishonor complying with that section is not given to an indorser, **the liability of the indorser under subsection (a) is discharged."**

As self-evident historical fact, this is what is shown here that BSI Financial Services has either **refused** Plaintiff's tender entirely, or has **refused to present it** for acceptance to settle the debt they have now brought this foreclosure action under.

**Texas Law § 3-505. EVIDENCE OF DISHONOR.**

**"a) The following are admissible as evidence.....of dishonor**

**(2) a purported stamp or writing of the drawee , on or accompanying the instrument stating that acceptance or payment has been refused."**

As self-evident academic fact,  **If BSI Financial Services  or their  bank never presented the tender for settlement they could have no such stamp or writing showing  the instrument had been refused, and can give Plaintiff  no notice evidencing dishonor according to law.**  And Plaintiff  will affirm  as fact by first hand knowledge **BSI Financial Services  has not given such notice.**

Defendant, having refused tender of the Plaintiff in discharge of her obligation; having wrongfully dishonored  Plaintiff's tender in discharge of her obligation without demonstrating  evidence or basis in fact of dishonor on which to do so as required by law; and therefore without proper, timely and valid notice of dishonor in accordance with the law justified or capable of being issued by the Defendant to  Plaintiff's tender in discharge of her obligation; the liability of the Plaintiff to Defendant as **indorser** of the instrument is discharged in law to the extent of the amount of the tender, of the obligation;

and the obligation of the Plaintiff as drawer of the instrument stated in Section 3-414(d) may not be enforced against her by the defendant.

Premises considered, based on these uncontroverted facts, by tender in discharge of this indebtedness to Defendant or by operation of law, the debt is discharged  and by reason of SATISFACTION  and PAYMENT Defendant  is estopped from their impending foreclosure action.

And for any or all cause in law cited above,  Plaintiff  has no knowledge under the law of anything other than that this debt is discharged. and  that credit should be given and adjustment of this account made by **BSI Financial Services**  accordingly and  Plaintiff here demands **strict proof** of any claims of Defendant to the contrary.

**BSI Financial Services**  has WRONGLY DISHONORED  PLAINTIFF'S TENDER OF PAYMENT  either having **refused**  Plaintiff's tender entirely, or has **refused to present it** for acceptance to settle the debt they now seek to  foreclose under.

As a proximate result of Defendant's  WRONGFUL DISHONOR OF TENDER OF PAYMENT, the Plaintiff will be damaged causing her now to suffer the loss of her possession and ownership of the property it was intended to payoff.

Plaintiff did not discover either the nature or the extent of this WRONGFUL DISHONOR OF TENDER OF PAYMENT perpetrated upon her by the Defendants until a date on or about July 2020.

Defendants' dishonor is an action with callous disregard for the rights of said Plaintiff, with the intention that the Plaintiff would be placed at unconscionable disadvantage and abuse at the hands of the Defendants.

As a proximate result of Defendants' actions in dishonor, Plaintiff will suffer damages and loss in the amount of the loss of her property at present market value.

Wherefore, Defendant **BSI Financial Services and U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CABANA SERIES III TRUST** should be permanently enjoined from this or any such foreclosure actions against Plaintiff's property, the debt being discharged, and Defendant ordered to release all claim on the property, subject of the alleged debt, on 3013 Edwards Dr. Plano, Texas 75025, and that full reconveyance of said property be made to the Plaintiff.

**Or in the alternative or if foreclosure has occurred before this action is adjudicated , Plaintiff moves the court:**

For monetary damages as provided by statute and damages in the amount of the value of the property at the time of any such sale;

For punitive damages;

For such other and further relief as the court may deem just and proper.

**Plaintiff prays the Court for this relief and that it be so ordered.**


Respectfully submitted Jana Pulaski
Without Recourse, All Rights Reserved

By: Settlor:- *Jana Rene Pulaski*

**Jana Rene Pulaski : Settlor**
**c/o WTPcHOPE**
**3013 Edward Drive ...PMB**
**Plano Texas [75025]**
**972-989-7945**
**214-218-3422**
WTPcHOPE@icloud.com
janapulaski@hotmail.com

# List of Exhibits
## JRP vs BSI

Exhibit 1:  Note.pdf

Exhibit 2: DoT.pdf

Exhibit 3: May 19,2016.pdf

Exhibit 4: Sept. 07,2018.pdf

Exhibit 5: Jan. 03,2019.pdf

Exhibit 6: Feb.12,2019.pdf

Exhibit 7:Mers Handbook .pdf

Exhibit 8: Dishonor of Presentment.pdf

Exhibit 9:Corrected to 8.5x11 Presentment.pdf



Filed: 12/21/2020 2:41 PM
Lynne Finley
District Clerk
Collin County, Texas
By Claudia Gomez Deputy
Envelope ID: 48582417

366-04739-2020

**LOAN #: 21380299**

# NOTE

MARCH 20, 2003                    FRISCO                         TEXAS
[Date]                                 [City]                            [State]

3013 Edwards Dr, Plano, TX 75025-4577
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 205,200.00        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is COUNTRYWIDE HOME LOANS, INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   5.875 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  FIRST          day of each month beginning on MAY 01, 2003      . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  APRIL 01, 2033      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 660694, Dallas, TX 75266-0694 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 1,213.84      .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of  FIFTEEN          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP MORTGAGE FORMS - (800)521-7291

Initials: ___

Form 3200 1/01



CHL (08/02)(d)



 

LOAN #: 21380299

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS INC

BY

David A. Spector
Managing Director

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____  (Seal)        _____  (Seal)
JANA PULASKI                      -Borrower                                        -Borrower

_____  (Seal)        _____  (Seal)
                                  -Borrower                                        -Borrower

*[Sign Original Only]*

GF# AH03-         STX   FF:$33.00   Pulaski

Filed 12/2/2020 7:44 PM
Lynne Finley District Clerk
Collin County, Texas
By Claudia Gomez Deputy
Envelope ID: 48582417

366-04739-2020

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
1800 Tapo Canyon
Simi Valley, CA 93063-6712



I certify the above to be a true and
correct copy of the original instrument.
SAFECO TEXAS
BY:

[Space Above This Line For Recording Data]

AH03272362                    0002138029959070
[Escrow/Closing #]            [Doc ID #]

# DEED OF TRUST

MIN 1000157-0002055781-1

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated MARCH 20, 2003        , together with all Riders to this document.
(B) "Borrower" is
JANA PULASKI, and Michael Pulaski, wife and husband

Borrower is the grantor under this Security Instrument.
(C) "Lender" is
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of NEW YORK              . Lender's address is
4500 Park Granada, Calabasas, CA 91302-1613
Lender includes any holder of the Note who is entitled to receive payments under the Note.
(D) "Trustee" is
CTC REAL ESTATE SERVICES
Trustee's address is
400 COUNTRYWIDE WAY, MSN SV-88 SIMI VALLEY, CA 93065-
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is a beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 12                                                          Initials:

 -6A(TX) (0005).01  CHL (12/01)    VMP MORTGAGE FORMS - (800)521-7291



Form 3044 1/01

CONV/VA

*23991*                    *0213802990000020 06A*

DOC ID # 0002138029959070

(F) "Note" means the promissory note signed by Borrower and dated MARCH 20, 2003       . The
Note states that Borrower owes Lender
TWO HUNDRED FIVE THOUSAND TWO HUNDRED and 00/100
Dollars (U.S. $   205,200.00   ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than APRIL 01, 2033       .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property;
(iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the
Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time,
or any additional or successor legislation or regulation that governs the same subject matter. As used in this
Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a
"federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan"
under RESPA.
(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not
that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors
and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the
repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance
of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose,
Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described
property located in the
COUNTY                              of COLLIN                                    :
[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

DOC ID # 0002138029959070

LOT 9, BLOCK T, OF HIGHLANDS OF RUSSELL PARK, PHASE 3, AN ADDITION TO THE CITY OF PLANO, COLLIN COUNTY, TEXAS, ACCORDING TO THE PLAT THEREOF RECORDED IN CABINET K, PAGE 167, OF THE PLAT RECORDS OF COLLIN COUNTY, TEXAS.

Parcel ID Number: R377200T00901
3013 Edwards Dr, Plano                                        which currently has the address of

[Street/City]

Texas   75025-4577 ("Property Address"):
     [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

Initials:

-6A(TX) (0005).01   CHL (12/01)          Page 3 of 12                              Form 3044 1/01

DOC ID # 000213802959070

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain

-6A(TX) (0005).01    CHL (12/01)        Page 4 of 12                                    Form 3044 1/01

DOC ID # 000213802959070

priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

-6A(TX) (0006).01   CHL (12/01)        Page 6 of 12                                    Form 3044 1/01

DOC ID # 0002138029959070

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

DOC ID # 000213802959070

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

Initials: XY  MDP

DOC ID # 0002138029959070

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

Initials:

DOC ID # 000213802995970

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

DOC ID # 000213B029959070

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public venue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee; Trustee Liability. All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Initials: ___

-6A(TX) (0008).01   CHL (12/01)            Page 10 of 12                  Form 3044 1/01

DOC ID # 0002138029959070

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**25. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:**

☐ **Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐ **Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☒ **Renewal and Extension of Liens Against Homestead Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐ **Acknowledgement of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

**28. Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

DOC ID # 000213802959070

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _Jana Pulaski_____ (Seal)
                                    JANA  PULASKI                    -Borrower

_____          _Michael Pulaski_____ (Seal)
                                    Michael Pulaski                  -Borrower

                                    _____ (Seal)
                                                                     -Borrower

                                    _____ (Seal)
                                                                     -Borrower


STATE OF TEXAS
County of  *Collin*

Before me  *the undersigned*                        on this day personally appeared
*Jana Pulaski and Michael Pulaski*                  , known to me
(or proved to me on the oath of _____ or through *from identification* )
to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this  20th  day of  March,  2003 .

(Seal)

                                    _____
                                    Notary Public

My Commission Expires:

K POCKRUS
NOTARY PUBLIC
State of Texas
Comm. Exp. 06-06-2005

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Envelope ID: 48582417
Status as of 12/3/2020 9:22 AM CST

Associated Case Party: Jana Pulaski

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jana Pulaski | | wtpchope@icloud.com | 12/2/2020 7:44:59 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jana Pulaski | | WTPcHOPE@icloud.com | 12/2/2020 7:44:59 PM | SENT |

Filed: 12/2/2020 7.44 PM
Lynne Finley
District Clerk
Collin County, Texas
By Claudia Gomez Deputy
Envelope ID: 48582417

366-04739-2020

**2016062000076950   06/20/2016 10:20:43 AM AS   1/2**

Prepared by and Return To:
**Kathryn Simmons**
Ditech Financial LLC
**TMP DG**
7360 S. Kyrene Road
Mail Stop T330
Tempe, AZ 85283
(888)315-8733

## ASSIGNMENT OF DEED OF TRUST
### Texas

Account #:        . . . .
PIN #:            **R-3772-00T-0090-1**
MERS MIN #:       **100015700020557811**
MERS Phone #:     **1-888-679-6377**

**FOR VALUE RECEIVED**, Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for **Countrywide Home Loans, Inc.**, its successors and assigns, its successors and assigns, whose address is P.O. Box 2026, Flint, MI 48501-2026, hereby assigns and transfers to **Ditech Financial LLC**, its successors and assigns, whose address is **7360 S. Kyrene Rd., T-314, Tempe, AZ 85283**, all its rights, title and interest in and to a certain Deed of Trust described below.

| | |
|---|---|
| **Deed of Trust Executed By:** | **Jana Pulaski, and Michael Pulaski, Wife and Husband** |
| **Deed of Trust Date:** | **March 20, 2003** |
| **Original Principal Sum** | **$205,200.00** |
| **Recorded Date** | **April 2, 2003** |
| **Document Number:** | **Book 5388, Page 008286/Document# 2003-0059242** |
| **County:** | **Collin** |
| **State:** | **TX** |

**TO HAVE AND TO HOLD** the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Deed of Trust.

**IN WITNESS WHEREOF**, the undersigned Assignor has executed this Assignment of Deed of Trust on ___**MAY 1 9 2016**___

Assignment of Deed of Trust
Page | 1

Mortgage    Electronic    Registration    Systems,    Inc.
("MERS")

By _____

Witness: _Tony G. Samaniego_    Name: _Edward Born_

Title:   Assistant Vice President

Witness: _Patricia Outcalt_

State of ARIZONA

County of MARICOPA

On _____MAY 1 8 2016_____, before me, the undersigned, personally appeared
_____Edward Born_____, Assistant Vice President for  Mortgage Electronic Registration
Systems, Inc., personally known to me or proved to me on the basis of satisfactory evidence to be the
individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the
instrument and that such individual made such appearance before the undersigned in the City of Tempe,
State of  Arizona.

Tami Wycoff
Notary Public
Maricopa County, Arizona
My Comm. Expires 03-04-18

Notary Public

Filed and Recorded
Official Public Records
Stacey Kemp, County Clerk
Collin County, TEXAS
06/20/2016 10:20:43 AM
$30.00 SCAPELA
20160620000769250

Account Number:

Assignment of Deed of Trust
Page | 2

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 48582417
Status as of 12/3/2020 9:22 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jana Pulaski | | WTPcHOPE@icloud.com | 12/2/2020 7:44:59 PM | SENT |

Associated Case Party: Jana Pulaski

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jana Pulaski | | wtpchope@icloud.com | 12/2/2020 7:44:59 PM | SENT |

Lynne Finley
District Clerk
366-04739-2020
Collin County, Texas
By Claudia Gomez Deputy
Envelope ID: 48582417

Recording Requested By:
Mission Global LLC - FNMA

20180907001130070    09/07/2018 03:57:22 PM AS  1/2

When Recorded Return To

B. Ferrito
Mission Global LLC
5701 E. Hillsborough Ave
Ste 2327
Tampa, FL  33610

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Collin, Texas
Mission Global LLC - FNMA#: 1686474619, "PULASKI," Investor's Loan #: 23044588 New Servicer's #:
2781902

Date of Assignment: September 7th, 2018
Assignor: DITECH FINANCIAL, LLC BY MISSION GLOBAL, LLC, ITS ATTORNEY-IN-FACT at 345 ST. PETER
STREET, SUITE 500, SAINT PAUL, MN  55102
Assignee: MTGLQ INVESTORS, LP at 2001 ROSS AVENUE, SUITE 2800, DALLAS, TX  75201

Executed By: JANA PULASKI, and MICHAEL PULASKI, wife and husband  To: MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC. "ITS SUCCESSORS
AND ASSIGNS"
Dated: 03-20-2003  Recorded: 04-02-2003 as Instrument No. 2003-0059242, Book/Reel/Liber 5388, Page 008286  In
the County of Collin, State of Texas.

Property Address: 3013  EDWARDS DR, PLANO, TX 75025

Legal: LOT 9, BLOCK T, OF HIGHLANDS OF RUSSELL PARK, PHASE 3, AN ADDITION TO
THE CITY OF PLANO, COLLIN COUNTY, TEXAS, ACCORDING TO THE PLAT THEREOF
RECORDED IN CABINET K, PAGE 167, OF THE PLAT RECORDS OF COLLIN COUNTY,
TEXAS.

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of
Trust having an original principal sum of $205,000.00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Deed of Trust.

TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to

*9/7/2018 4:00:52 PM*33629135*33629139*1275*TXCOLLI_TRUST_ASSIGN_ASSN

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2
the terms contained in said Deed of Trust. IN WITNESS WHEREOF, the assignor has executed these presents the
day and year first above written:

DITECH FINANCIAL, LLC BY MISSION GLOBAL, LLC, ITS ATTORNEY-IN-FACT
On September 7th, 2018

By 
Jennifer Grenier, Vice President

STATE OF Florida
COUNTY OF HILLSBOROUGH

On September 7th, 2018, before me, Rina Abreu, a Notary Public in and for HILLSBOROUGH in the State of Florida,
personally appeared Jennifer Grenier, Vice President, personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their
signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument

WITNESS my hand and official seal,

Rina Abreu
Notary Expires: 9/13/2021  #GG 142813

RINA ABREU
Notary Public - State of Florida
Commission # GG 142813
My Comm. Expires Sep 13, 2021
Bonded through National Notary Assn.

*9/7/2018 4:00:52 PM*33629135*33629139*1275*TXCOLLI_TRUST_ASSIGN_ASSN



Filed and Recorded
Official Public Records
Stacey Kemp, County Clerk
Collin County, TEXAS
09/07/2018 03:57:22 PM
$30.00 NELLIOTT
20180907001130070

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 48582417
Status as of 12/3/2020 9:22 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jana Pulaski | | WTPcHOPE@icloud.com | 12/2/2020 7:44:59 PM | SENT |

Associated Case Party: Jana Pulaski

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jana Pulaski | | wtpchope@icloud.com | 12/2/2020 7:44:59 PM | SENT |

Lynne Finley
District Clerk
Collin County, Texas
By Claudia Gomez Deputy
Envelope ID: 48582417

**20190205000119370    02/05/2019 08:25:00 AM AS  1/2**

Prepared By and Return To:
Kathleen Collins
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

Space above for Recorder's use

Loan No: 2781902

7906500

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **MTGLQ INVESTORS, L.P.**, whose address is **2001 ROSS AVENUE SUITE 2800, DALLAS, TEXAS 75201**, (ASSIGNOR), does hereby grant, assign and transfer to **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CHALET SERIES III TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: 3/20/2003
Original Loan Amount: $205,200.00
Executed by (Borrower(s)): **JANA PULASKI & MICHAEL PULASKI**
Original Trustee: **CTC REAL ESTATE SERVICES**
Original Beneficiary: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS**
Filed of Record:  In Book 5388, Page 008286,
Document/Instrument No: 2003-0059242 in the Recording District of **COLLIN, TX**, Recorded on 4/2/2003.

Property more commonly described as: **3013 EDWARDS DR, PLANO, TEXAS 75025-4577**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **JAN 0 3 2019**

MTGLQ INVESTORS, L.P.

By: **BIFF ROGERS**
Title: **VICE PRESIDENT**



Witness Name: **Bruce Forney**

2781902 FNMA NPL10 7906500

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF
THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE
TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of    **TEXAS**

County of    **DALLAS**

On  **JAN 0 3 2019**  , before me, _____ Blake Doyle _____ , a Notary Public, personally appeared **BIFF
ROGERS, VICE PRESIDENT** of/for **MTGLQ INVESTORS, L.P.**, personally known to me, or who proved to
me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **TEXAS** that the
foregoing paragraph is true and correct. I further certify BIFF ROGERS, signed, sealed, attested and delivered this
document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): _____ Blake Doyle _____
My commission expires: _____ SEP 1 4 2021 _____

BLAKE DOYLE
Notary Public, State of Texas
Comm. Expires 09-14-2021
Notary ID 131278981

Filed and Recorded
Official Public Records
Stacey Kemp, County Clerk
Collin County, TEXAS
02/05/2019 08:25:00 AM
$30.00 SCAPELA
20190205000119370

2781902 FNMA NPL10 7906500

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Envelope ID: 48582417
Status as of 12/3/2020 9:22 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jana Pulaski | | WTPcHOPE@icloud.com | 12/2/2020 7:44:59 PM | SENT |

Associated Case Party: Jana Pulaski

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jana Pulaski | | wtpchope@icloud.com | 12/2/2020 7:44:59 PM | SENT |

Filed 12/2/2020 3:44 PM
District Clerk
Collin County, Texas
By Claudia Gomez Deputy
Envelope ID: 48582417

**20190218000165040    02/18/2019 08:08:49 AM AS  1/2**

Prepared By and Return To:
Kathleen Collins
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

Space above for Recorder's use

Loan No: 2792946

8440138

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF CHALET SERIES III TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNOR), does hereby grant, assign and transfer to **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CABANA SERIES III TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: **3/20/2003**
Original Loan Amount: **$205,200.00**
Executed by (Borrower(s)): **JANA PULASKI & MICHAEL PULASKI**
Original Trustee:  **CTC REAL ESTATE SERVICES**
Original Beneficiary:  **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS**
Filed of Record:  In Book 5388, Page 008286,
Document/Instrument No: 2003-0059242 in the Recording District of **COLLIN, TX**, Recorded on 4/2/2003.

Property more commonly described as: 3013 **EDWARDS DR, PLANO, TEXAS 75025-4577**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: ___FEB 1 2 2019___

**US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF CHALET SERIES III TRUST, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**



By: **MARK WATERMAN**                    Witness Name: **MONICA GARDNER**
Title: **VICE PRESIDENT**

2792946 GS_FNMA_Jun18 8440138

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of  **FLORIDA**

County of  **PINELLAS**

On **FEB 1 2 2019** _____, before me, **VERONIQUE J. SIMS**, a Notary Public, personally appeared **MARK WATERMAN, VICE PRESIDENT of/for MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF CHALET SERIES III TRUST,** personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.  I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct.  I further certify MARK WATERMAN, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **VERONIQUE J. SIMS**
My commission expires: 1/21/2022

VERONIQUE J SIMS
Commission # GG 177066
Expires January 21, 2022
Bonded Thru Budget Notary Services

Filed and Recorded
Official Public Records
Stacey Kemp, County Clerk
Collin County, TEXAS
02/18/2019 08:08:49 AM
$30.00 NPRECELLA
20190218000165040



2792946 GS_FNMA_Jun18  8440138

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 48582417
Status as of 12/3/2020 9:22 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jana Pulaski | | WTPcHOPE@icloud.com | 12/2/2020 7:44:59 PM | SENT |

Associated Case Party: Jana Pulaski

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jana Pulaski | | wtpchope@icloud.com | 12/2/2020 7:44:59 PM | SENT |

Filed 12/1/2020 7:44 PM
District Clerk
Collin County, Texas
By Claudia Gomez Deputy
Envelope ID: 48582417

366-04739-2020

Process Loans, Not Paperwork℠

# MERS

## MERS Certifying Officers & the Corporate Resolution Management System

Richard Anderson

Jay Arneja

# MERS Corporate Resolution

- Introduction

- Purpose of resolution

- Usage and authority

- Corporate resolution vs. power of attorney



MERS
Process Loans, Not Paperwork™

# Sample Corporate Resolution

Be it Resolved that the attached list of candidates are officers of sinsert name of company> a Member of Mortgage Electronic Registration Systems, Inc. (MERS), and are hereby appointed as assistant secretaries and vice presidents of MERS, and, as such, are authorized to:

(1) release the lien of any mortgage loan registered on the MERS System that is shown to be registered to the Member;

(2) assign the lien of any mortgage loan naming MERS as the mortgagee when the Member is also the current promissory note-holder, or if the mortgage loan is registered on the MERS System, is shown to be registered to the Member;

(3) execute any and all documents necessary to foreclose upon the property securing any mortgage loan registered on the MERS System that is shown to be registered to the Member, including but not limited to (a) substitution of trustee on Deeds of Trust, (b) Trustee's Deeds upon sale on behalf of MERS, (c) Affidavits of Non-military Status, (d) Affidavits of Judgment, (e) Affidavits of Debt, (f) quitclaim deeds, (g) Affidavits regarding lost promissory notes, and (h) endorsements of promissory notes to VA or HUD on behalf of MERS as a required part of the claims process;

(4) take any and all actions and execute all documents necessary to protect the interest of the Member, the beneficial owner of such mortgage loan, or MERS in any bankruptcy proceeding regarding a loan registered on the MERS System that is shown to be registered to the Member, including but not limited to: (a) executing Proofs of Claim and Affidavits of Movant under 11 U.S.C. Sec. 501-502, Bankruptcy Rule 3001-3003, and applicable local bankruptcy rules, (b) entering a Notice of Appearance, (c) vote for a trustee of the estate of the debtor, (d) vote for a committee of creditors, (e) attend the meeting of creditors of the debtor, or any adjournment thereof, and vote on behalf of the Member, the beneficial owner of such mortgage loan, or MERS, on any question that may be lawfully submitted before creditors in such a meeting, (f) complete, execute, and return a ballot accepting or rejecting a plan, and (g) execute reaffirmation agreements;

Must be officer of your company

Limitation: may only execute documents for loans registered to your company

Para 3 thru 7 break out specific types of documents a MERS officer may execute



**MERS**
Process Loans, Not Paperwork™

# Sample Corporate Resolution (cont.)

(5) take any and all actions and execute all documents necessary to refinance, subordinate, amend or modify any mortgage loan registered on the MERS System that is shown to be registered to the Member.

(6) endorse checks made payable to Mortgage Electronic Registration Systems, Inc. to the Member that are received by the Member for payment on any mortgage loan registered on the MERS System that is shown to be registered to the Member;

(7) take any such actions and execute such documents as may be necessary to fulfill the Member's servicing obligations to the beneficial owner of such mortgage loan (including mortgage loans that are removed from the MERS System as a result of the transfer thereof to a non-member of MERS).

I, William C. Hultman, being the Corporate Secretary of Mortgage Electronic Registration Systems, Inc., hereby certify that the foregoing is a true copy of a Resolution duly adopted by the Board of Directors of said corporation effective as of the **<insert day> day of <insert month>, 2009** which is in full force and effect on this date and does not conflict with the Certificate of Incorporation or By-Laws of said corporation.

_____

William C. Hultman, Secretary

Broad Authority



# MERS Certifying Officer

- Role and responsibilities
- Eligibility
  - Membership Rule 3
  - Certification required



MERS
Process Loans, Not Paperwork™

# Corporate Resolution Management System (CRMS) & Certification Process

- When: April 19, 2010
- Who: members that have or will have an active MERS Corporate Resolution
- What: web-based application to facilitate the processing of member requests for a MERS Corporate Resolution and updates to their MERS certifying officers list



MERS

Process Loans, Not Paperwork™

# Project Managers

- Administrative access is granted to MERS project manager for each member

  — Request a new corporate resolution

  — Request updates to MERS certifying officer list

  — Update contact information for certifying officers

  — Order MERS corporate seals




# Certifying Officers

- Certification access to certifying officers
  - Review *MERS Certifying Officer Primer*
  - Take certification quiz
  - Renew certification yearly
  - Special announcements



MERS
Process Loans, Not Paperwork™

# Certification

- Review primer and take certification quiz
  - Information on roles and responsibilities of certifying officers
  - Ensures basic understanding of MERS
  - Quiz consists of 10 randomly selected questions
  - Must answer eight out of 10 questions correctly to pass
  - Renew annually



# Sample Certification Q & A's

- What title should a MERS certifying officer use when executing documents as an officer of MERS?

- Where is MERS incorporated?

- True or false: A MERS certifying officer has authority to accept service of process on behalf of MERS.



# CRMS: A Web-Based Application

- Simple, user-friendly method to maintain your certifying officer list

- Email notification to project manager with logon credentials to access CRMS

- Leads to centralized management by project manager



MERS
Process Loans, Not Paperwork™



# Login Page

## MERS

## Corporate Resolution Management System

User Name:

Password:

Forgot your password?

Log in

Home Page | Contact Us | Location | Privacy Policy | Site Map

Copyright 2010 by MERSCORP, Inc. 1-800-646-MERS (6377)
Other products or company names are or may be trademarks and are the property of their respective holders.

Log in credentials
provided via email.

# Profile Page For Project Manager









Sample Test Question



# Certification



Q & A



Process Loans, Not Paperwork™

# Sample Question

- Where is MERS incorporated?

a. California

b. Delaware

c. Michigan

d. Virginia



# Answer

■ Where is MERS incorporated?

a. California

b. Delaware

c. Michigan

d. Virginia





Process Loans, Not Paperwork™

# Sample Question

- True or False: MERS assignments should also reference a transfer of the corresponding promissory note (e.g., ". . . together with Note or other evidence of indebtedness . . .")



## Answer

- True or <u>False</u>: MERS assignments should also reference a transfer of the corresponding promissory note (e.g., " . . . together with Note or other evidence of indebtedness . . .")



# Sample Question

▪ When is a MERS Certifying Officer's authority to execute a MERS document terminated?

a. Member resigns its membership;

b. Officer is no longer employed by Member organization;

c. Member organization no longer has an interest in the loan;

d. Upon notice from MERS Corporate;

e. All of the above.



MERS
Process Loans, Not Paperwork™

# Answer

- When is a MERS Certifying Officer's authority to execute a MERS document terminated?

a. Member resigns its membership;

b. Officer is no longer employed by Member organization;

c. Member organization no longer has an interest in the loan;

d. Upon notice from MERS Corporate;

e. All of the above.




MERS
Process Loans, Not Paperwork™

# Sample Question

- Which of the following is not a method in which MERS accepts service of process?

a. Service delivered to MERS' corporate office in VA;

b. Service delivered to MERS' P.O. Box in Flint, MI;

c. Service delivered to a MERS Certifying Officer;

d. Service delivered to a MERS Registered Agent.



Process Loans, Not Paperwork™

# Answer

- Which of the following is not a method in which MERS accepts service of process?

a. Service delivered to MERS' corporate office in VA;

b. Service delivered to MERS' P.O. Box in Flint, MI;

c. Service delivered to a MERS Certifying Officer;

d. Service delivered to a MERS Registered Agent.



Process Loans, Not Paperwork™

# Sample Question

- True or False: Mortgage rights are electronically assigned on the MERS® System



# Answer

- True or False: Mortgage rights are electronically assigned on the MERS® System



# Sample Question

- True or False: MERS I-Registration is an information only registration of a loan; MERS is not a party to the mortgage loan.



# Answer

- True or False: MERS I-Registration is an information only registration of a loan; MERS is not a party to the mortgage loan.



**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 48582417
Status as of 12/3/2020 9:22 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jana Pulaski | | WTPcHOPE@icloud.com | 12/2/2020 7:44:59 PM | SENT |

Associated Case Party: Jana Pulaski

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jana Pulaski | | wtpchope@icloud.com | 12/2/2020 7:44:59 PM | SENT |

Filed: 12/21/2020 7:44 PM
Lynne Finley
District Clerk
Collin County, Texas
By Claudia Gomez Deputy
Envelope ID: 48582417

**BSI** *Financial*
*Services*

344 S Franklin St. / Second Floor
Titusville PA 16354
Toll Free: 800-327-7861
Fax: 814-217-1366
Myloanweb.com/BSI
PO Box 517

366-04739-2020

June 15, 2020

JANA PULASKI
3013 EDWARDS DR
PLANO          TX 75025

RE: **Account #: 1461465392**
Property Address: 3013 EDWARDS DR
PLANO          TX 75025

Dear JANA PULASKI:

Enclosed please find Check #5093, in the amount of $500,000.00, which is being returned to you because:

   **X**   A certified check or money order is required for the loan payment.

   __  Your loan is in foreclosure.

   __  Incomplete/missing information is required.  Please provide: __

   __  Incorrect information has been provided.  Please provide: __

   __  We are unable to locate an account number.

   __  Your account is paid in full.

   __  Other: __

If you have questions or need additional information, please call us toll-free at 800-327-7861 to speak with a Customer Care Representative.  We are available to assist you Monday through Friday 8:00 a.m. - 11:00 p.m. (ET) and Saturday 8:00 a.m. - 12:00 p.m. (ET).

Sincerely,

Cashiering Department
BSI Financial Services
NMLS # 38078; # 1195811

Licensed as Servis One, Inc. dba BSI Financial Services.

BSI NMLS # 38078. Customer Care Hours: Mon. - Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET).
If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally.  Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 48582417
Status as of 12/3/2020 9:22 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jana Pulaski | | WTPcHOPE@icloud.com | 12/2/2020 7:44:59 PM | SENT |

Associated Case Party: Jana Pulaski

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jana Pulaski | | wtpchope@icloud.com | 12/2/2020 7:44:59 PM | SENT |

Filed 12/14/2020 12:00 XM
District Clerk
Collin County, Texas
By Claudia Gomez Deputy
Envelope ID: 48896232

RE 369 783 314 US

Dear Scott A. Johnson,
Senior Vice President, Corporate Controller,
BSI Financial Services 314 s. Franklin Street
2ⁿᵈ Floor / P.O. Box 517
Titusville, Pennsylvania 16354

I William Timothy ©, have the authority as Grantor, and holder of the unaltered Deeds,
and Notes for JANA PULASKI ESTATE in care of WTPCHOPE © PNPF, and I am expressing
my Will to provide remedy for the alleged debt Title claim presentment via Email; From: BSI
Financial Services TO: JANA PULASKI, with the enclosed Registered Setoff EFT Instrument to
completely satisfy any and all BSI Financial Services claims or any and all other unauthorized
egregious administration, here by terminating any and all unauthorized Trustee relationships ,
to JANA PULASKI ESTATE property et al This Acknowledgement of said public debt will be
discharged with this order for settlement and setoff via the enclosed special deposit EFT.

As the occupant of the Corporate Controller Office your acceptance of the enclosed
Registered security entrusts you with specific duties and responsibilities as fiduciary trustee
when required and requested, you shall follow the instructions to carry out the Will of the
Grantor...    WTPCHOPE © PNPF,
1. A) As Fiduciary you will insure the immediate disbursement of the Registered Setoff
presentment to completely satisfy any and all alleged BSI Financial Services claims, insure the
execution and removal of all liens thus estopping all foreclosure proceedings immediately, by
proper execution of this transfer of Title on Texas Land Recording Office for Jana Rene ©. By
this Beneficial Statement of Interest and your acceptance of the enclosed Registered Setoff
presentment you are correcting the Record of any and all formerly professed statuses by
Countrywide Home Loans and all successors.
1. B) Immediate disbursement of all remaining balances specifically into directed Beneficiary
accounts by special deposit. ...
    1. B. 1) ...Account number to be provided upon acceptance and successful execution.
    1. B 2) ...Updating Homestead Habitation Status for the named Beneficiaries to the Jana
Rene© ...Pulaski Estate,
    1. B 3) ... Provisioning for operations and expenses, care and maintenance managed by to
be named Successor Trustee upon termination of intended relationship and the directed duties
your acceptance and special deposit of the enclosed Registered Security Setoff Instrument
remaining balance.
2. A) Fulfill all requests from the grantor and beneficiary for Jana Rene© Pulaski Estate.
2. B) Complete your requests, requirements, and responsibilities in Good Faith as directed.
2. C) Complete all necessary correspondence with the Grantor and the Grantor will provide upon
request any information necessary for proper recordation, and ledgering. Provide any additional
information that will complete this transaction in good faith.

Please direct your correspondence to:          By: ... Grantor
WTPCHOPE © PNPF
Attention: By ...Grantor                        By: Grantor _____
PMB 10104 Max Lane                              Reserve all Rights / Without Prejudice
On Texas Frisco                                 State National
Postal Exemption [75035]
Without United States

Copy to United States of America Treasury Secretary Occupant
Copy to Internal Revenue Comptroller occupant
Copy to Comptroller of Currency
Copy to Bank of America CFO occupant.

Statement of Interest  Verified By Notary

STATE OF Texas
COUNTY OF Collin

The foregoing instrument was acknowledged before
me this 30ᵗʰ day of May, 2020, by William Palmer

_____         Brianna Y. Henry
Notary Public's Signature    Notary Name
My Commission Exp. 08/21/2023

BRIANNA Y. HENRY
Notary Public, State of Texas
Comm. Expires 08-21-2023
Notary ID 132138756

EXHIBIT

# Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Envelope ID: 48896232
Status as of 12/14/2020 8:17 AM CST

Associated Case Party: Jana Pulaski

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jana Pulaski | | wtpchope@icloud.com | 12/12/2020 3:43:09 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jana Pulaski | | WTPcHOPE@icloud.com | 12/12/2020 3:43:09 PM | SENT |